Learned, P. J.
This is an action of trespass quare clausum. The parties are adjacent owners; plaintiff owning lot 148, defendant north part -of lot 147; and the question involved is the place of their boundary line.
A stipulation had been made that plaintiff was in possession of part of lot 143, defendant of lot 147 adjoining; that in 1849 there was a suit between former owners which determined the location of the line between lot 148 and lot 147, and that the line determined in that suit would be the line between the parties.
The defendant claims that evidence was admitted of what was done prior to that suit and that such admission was error, under this stipulation.
The judgment roll in the action of 1849 was put in evidence. It was an action of trespass quare clausum and the declaration sets forth the close of the plaintiff Fox, therein by courses and distances, and as the northerly part of lot 147 containing 104 acres, and alleges an entry of the defendant Smith, thereon. There is a plea of not guilty, a verdict of guilty and an assessment of damages.
Now it does not appear from this judgment roll on what part of the close of the plaintiff, Fox, the defendant, Smith, entered. And from that roll we cannot tell where the line between the parties was decided to lie. The description in the judgment roll is similar to that in the defendant’s title deed.
The judgment roll is evidence that Smith trespassed on some part of Fox’s land, contained within the description. But such trespass might have been committed, wherever the - actual line- between the parties was found to be by the jury. The description begins at the northeast corner of lot 147, comes around to the northwest corner and then ends at the northeast corner; thus showing the north line to be the boundary claimed by defendant. But where that boundary is cannot be determined by that judgment roll.
Of course there is no doubt of the correctness of defendant’s principle: that a judgment is conclusive as to the mat *155 ters put in issue and decided. The difficulty is to find out what was decided by that judgment.
Both of the lots are in the Glen patent, and it is stated that this patent was issued after the Northampton and the Kayaderosseras patent had been granted, respectively north and south of the Glen patent; and that sufficient land was not left for the Glen patent.
In the action of 1849 above mentioned Fox claimed as the boundary line the so-called Thompson line; Smith claimed the boundary to be about forty rods south.
Now we do not see that the stipulation of the parties and the judgment of 1849 prevent the parties from showing, if they can, what was decided by that judgment. For clearly, without some extraneous proof, no one can know where the jury in that action decided the line to be.
The side lines of 147 diverge as they go northward. The north line of the lot according to defendants description of his land is thirty-five chains. The defendant claims that the only way is to measure from the Glen patent line, northwardly along the side lines till points are reached where a connecting line parallel with the patent line would be thirty-five chains long. Such a measurement would be some evidence undoubtedly. But it would not be conclusive. And even in the judgment roll the north line of the land of Fox is not described as parallel with the patent line. And it is the testimony of one of defendants witnesses, a surveyor, that the calls of the defendant’s deed will not come together at the corners. He states that neither the Martin lot nor the Woodward lot run both together; (lot 147) will plot. Ormsby, a surveyor, testifies similarly. Hence if these lots as given in courses and distances, will not plot, it would not be right to assume that the north line of lot 147 must be thirty-five chains and to reject all other modes of determining where that north line lies.
The learned justice in his charge seems to have stated the matter very clearly; showing to the jury that the question was to determine, if possible, what line was decided upon by the jury in the suit of 1849, and witnesses were called who claimed to be able to show by their recollection, that the Thompson line was that which was then established. On all the evidence the jury in this present case seem to have considered the Thompson line as the true boundary. Unless there is some material error their verdict should stand and should end this litigation.
After the defendant had rested and while the plaintiff was proving facts in rebuttal, the defendant asked leave to call a witness, naming him, to show that Judge Thompson died December 1845. The object of this was to contradict one Fox, a witness of plaintiff, who had testified that in 1847 or 1848 Judge Thompson, the grantor of Fox’s father, with' others had surveyed the line before the suit of 1849. The plaintiff objected to this because defendant had rested Ms *156 ease and plaintiff was not prepared to meet it with evidence. And permission was refused. This was clearly a matter of discretion with the trial justice. The plaintiff so far as we . know, might have been able to contradict the testimony which was offered by defendant, if it had been presented at the proper time. But he was then unprepared, and it would have been unjust to him that evidence of that kind should be then introduced. In all such matters as this the trial justice knows better than the appellate court what ought to-be done.
These two matters are all to which the appellant calls, our attention.
Judgment and order affirmed, with costs.
Bockés and Landon, JJ., concur.